**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria)**

| | |
|---|---|
| TARA LYNN R. ZURAWSKI<br>6290 Walkers Croft Way<br>Alexandria, Virginia  22315<br><br>    Plaintiff,<br><br>        v.<br><br>OFFICE OF THE ATTORNEY GENERAL –<br>  COMMONWEALTH OF VIRGINIA<br>202 North Ninth Street<br>Richmond, Virginia 23219<br><br>Serve:  Mark R. Herring, Esq.<br>         Attorney General<br>         Office of the Attorney General<br>         202 N. 9th Street<br>         Richmond, Virginia  23219<br><br>    Defendant. | Civil Action No. _____ |

## **COMPLAINT**

Plaintiff, Tara Lynn R. Zurawski, by counsel, submits this Complaint against the Defendant, Office of The Attorney General, Commonwealth of Virginia, and alleges as follows:

## **NATURE OF ACTION**

This action states a claim for discrimination/failure to accommodate in violation of the Rehabilitation Act of 1973 (Section 504), which prohibits discrimination on the basis of disability.

## **PARTIES**

1. Plaintiff Tara Lynn R. Zurawski ("Ms. Zurawski") is a resident and citizen of Fairfax County in the Commonwealth of Virginia.

2. The Office of the Attorney General for the Commonwealth of Virginia ("OAG") provides legal services to the Commonwealth's agencies, boards, commissions, colleges and universities; in essence, it is the Commonwealth's law firm.

3. At all times relevant to this action, the OAG was engaged in an industry affecting commerce and had 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

4. Ms. Zurawski was an "employee" within the meaning of 42. U.S.C. §12111(4).

5. OAG is an "employer" within the meaning of 42. U.S.C. §12111(5)(A).

## JURISDICTION

6. This Court has jurisdiction over the subject matter of Ms. Zurawski's claims under the Rehabilitation Act of 1973.

7. This Court has jurisdiction over Ms. Zurawski's claims under the common law of Virginia.

8. The OAG, acting through its agents, transacted business and caused tortious injury to Ms. Zurawski by acts or omissions within the Commonwealth of Virginia, in this judicial district.

9. OAG is subject to the personal jurisdiction of this Court pursuant to Va. Code §§ 8.01-328.11 (A)(1), (2) and (3).

## VENUE

10. The OAG is present in and regularly conducts affairs and business activities in this judicial district.

11. Ms. Zurawski was employed by the OAG and worked from and resided in this judicial district, and the causes of action alleged in this action arose in this judicial district, in Fairfax County, Virginia.

12. The unlawful employment practices committed by the OAG occurred in this judicial district, employment records relevant to such practices are maintained and administered in this judicial district, and Ms. Zurawski would still be employed in this judicial district but for the unlawful practices of Defendant.

13. Venue over Ms. Zurawski's claims is proper in this Court.

## BACKGROUND

14. Ms. Zurawski is a hard-working, well-respected attorney who served as a Senior Assistant Attorney General and Trial Section Chief in the OAG, until her employment was wrongfully terminated on December 4, 2019.

15. Ms. Zurawski joined the OAG in June 2018.

16. Prior to joining the OAG, Ms. Zurawski was seriously considering accepting a partnership offer with another large firm in the Washington, D.C. area at the time she was being recruited by the OAG.

17. Based on the promises which were made to Ms. Zurawski by the Office of the Attorney General, Ms. Zurawski accepted the position with the OAG.

18. Unfortunately, the representations made by agents of the OAG to induce Ms. Zurawski to accept the position were false, and the duties of the position were not as promised.

19. In May 2019, Ms. Zurawski collapsed at work and had to be taken to the emergency room where she was treated for sepsis. The sepsis appeared to be the result of her chronic illnesses after an extended exposure to black mold while residing in her Richmond residence.

20. Ms. Zurawski was in the hospital from May 8 - 11, 2019, with a life-threatening illness, but worked remotely from the hospital and stayed well-informed of all activities and

deadlines in the Trial Section. Although she was released after a few days, the doctors indicated that she could relapse. She immediately sought follow-up care in Northern Virginia as doctors suspected something more serious, but undiagnosed, was happening. All the while, Ms. Zurawski continued to work remotely, even on weekends.

21. Unfortunately, on June 24, 2019, Ms. Zurawski did relapse, and was hospitalized in Fairfax. She remained in the hospital from June 24- 26, 2019. She did not request FMLA leave or paperwork, but notified Mr. Towell that she was in the hospital, and would work remotely as she had previously done.

22. However, on June 24, 2019, the OAG's Human Resource Department sent her paperwork indicating that this hospitalization and any recuperation time would count as FMLA leave. She was instructed to complete the requisite paperwork, and to have her doctor do so as well.

23. Ms. Zurawski indicated that she did not want to take FMLA leave, and that she could work, so long as she could work remotely, as her doctor said she could not withstand the physical demands of being in the office just yet and had recommended a gradual return to the physical office to avoid a relapse.

24. On numerous occasions, Ms. Zurawski and her physician sought telecommuting and a gradual return to work in the office as a reasonable accommodation. This request was ignored, and the OAG continued to ask for the completed FMLA paperwork. Not once did Ms. Zurawski receive a response from the OAG to her written, formal request for an accommodation.

25. Indeed, <u>before</u> she even requested an accommodation formally, Tonya Woodson, the OAG's Human Resources Director, advised Ms. Zurawski that <u>any</u> request to telecommute—no matter the duration—would be denied. The OAG made this decision without reviewing any information provided by Ms. Zurawski or her physician.

26. Again, Ms. Zurawski continued to seek telecommuting and a gradual return to work as a reasonable workplace accommodation, but the OAG refused to even consider the request or engage in an interactive process.

27. Instead, the OAG insisted that Ms. Zurawski take FMLA leave and halt all work. Ms. Zurawski was then forced to use all of her remaining leave (of which she would have had substantially more if Mr. Towell had advised her that she was entitled to compensatory time for her many overtime hours), until the OAG moved her to conditional leave without pay status.

28. The OAG further requested that Ms. Zurawski pay for all benefits out-of-pocket, even charging her for parking, which she could not use. Ms. Zurawski was also told to seek short-term disability and take a significant pay cut, despite her objections and ability to work. Ms. Zurawski was ultimately denied short-term disability, without a medical records review, and received no pay from the OAG from June 2019 until her employment was terminated in December 2019.

29. Throughout this time period, Ms. Zurawski remained able to work remotely with a gradual return to work. Nevertheless, the OAG denied or ignored her requests for reasonable accommodation, and refused to permit her the reasonable accommodation of telecommuting with a gradual return to work. She was instructed that she could only return to work when she was completely healthy.

30. She submitted three formal requests to telecommute as a reasonable accommodation for her disability (June 26, 2019, July 23, 2019, and October 29, 2019), and requested the reasonable accommodation informally many times. She requested guidance multiple times as to how she could return to work gradually, to avoid a relapse, and as to the paperwork that was needed.

31. Despite being told no specific OAG paperwork was required from her physician by Ms. Woodson, in November 2019, Ms. Zurawski was suddenly presented with a newly created form to complete. While Ms. Zurawski was working to complete this new paperwork, with the OAG's full knowledge of her attempts to return, the OAG informed Ms. Zurawski that her employment status was "conditional" and that she would need to reapply for her job, if it was not already filled.

32. At the same time, she learned that the Acting Trial Section Chief announced that Ms. Zurawski was not returning to the OAG and her position would be posted to solicit applicants that week.

33. Ms. Zurawski was extremely alarmed by this news since she was in the process of trying to obtain doctors' appointments and clearances to return and to complete the newly created forms required by OAG.

34. On November 22, 2019, Ms. Zurawski formally complained, through counsel of the conditional nature of her employment.

35. In response, Ms. Zurawski was informed that she was mistaken; her employment had not been terminated, her position had not been filled, and she would be contacted by Human Resources about a return to work in December.

36. However, Ms. Zurawski was also informed that the OAG had ordered an investigation. This investigation was in direct retaliation for the claims Ms. Zurawski raised on November 22, 2019 via counsel.

37. On December 2, Ms. Zurawski was contacted by Human Resources about a return to work in December. She responded by outlining concerns about the way she was treated and indicated that these matters must be resolved prior to her return.

38. Rather than attempt any resolution, the OAG terminated Ms. Zurawski's employment on December 4, 2019 and accused her of abandoning her post.

## COUNT ONE – DISCRIMINATION IN THE TERMINATION OF EMPLOYMENT IN VIOLATION OF THE REHABILITATION ACT OF 1973

39. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

40. At all relevant times, Ms. Zurawski was a qualified individual with disabilities within the protected class of the Rehabilitation Act of 1973.

41. OAG terminated Ms. Zurawski's employment on account of its perception that Ms. Zurawski suffered from a disability and related limitations which might continue to impact her ability to work, even though Ms. Zurawski worked remotely during most, if not all, of her absences, and had been cleared to work remotely by her physician, prior to her eventual full time return.

42. On numerous occasions, Ms. Zurawski and her physician sought telecommuting and a gradual return to work in the office as a reasonable accommodation. This request was ignored, and Ms. Zurawski never received a response from the OAG to her written, formal request for an accommodation.

43. Indeed, before she even requested an accommodation formally, Tonya Woodson, the OAG's Human Resources Director, advised Ms. Zurawski that any request to telecommute—no matter the duration—would be denied. The OAG made this decision without reviewing any information provided by Ms. Zurawski or her physician.

44. Ms. Zurawski continued to seek telecommuting and a gradual return to work as a reasonable workplace accommodation, including submitting three formal requests for accommodation for her disability, but the OAG refused to even consider the request or engage in an interactive process. In fact, Ms. Zurawski was instructed that she could only return to work when she was completely healthy.

45. The OAG then informed Ms. Zurawski that her employment status was "conditional" and that she would need to reapply for her job, if it was not already filled, by the time she was completely health and able to return to work with no accommodations.

46. After she complained about the change in her employment status, Ms. Zurawski was contacted by OAG about a December return to work date. She responded by outlining concerns about the way she was treated and indicated that these matters must be resolved prior to her return. Rather than attempt any resolution, the OAG terminated Ms. Zurawski's employment on December 4, 2019 and accused her of abandoning her post.

47. Prior to her termination, Ms. Zurawski was performing her job at a level that met or exceeded OAG's legitimate expectations.

48. After making several requests for accommodation in order to return to work, Ms. Zurawski was told she could not return until she was completely healthy and did not need any accommodation, her employment status was changed to "conditional," and then she was terminated.

8

49. At the time of his termination, Ms. Zurawski had never been counseled or reprimanded for performance related issues, and had never been notified that her job was in jeopardy, in any manner. Her termination was not related to performance.

50. OAG's termination of Ms. Zurawski constituted a violation of the Rehabilitation Act of 1937.

51. OAG's conduct in so doing evinced a willful and conscious disregard for the rights of Ms. Zurawski, and reflected malice, spite, and ill-will.

52. As a direct and proximate result of OAG's discriminatory discharge, Ms. Zurawski has suffered and continues to suffer damages, including loss of income, loss of employee benefits, lost career and business opportunities, medical expenses, anxiety and anxiety attacks, emotional distress, insomnia, depression, embarrassment, humiliation, inconvenience, mental and emotional anguish and distress, physical injury and stress, litigation expense, including attorneys' fees and other injury.

53. Due to the severity of OAG's conduct, Ms. Zurawski is also entitled to punitive damages.

## PRAYER FOR RELIEF

Accordingly, Plaintiff respectfully requests that judgment be entered in her favor and against Defendant, on the above count, and that this Court:

(a) Award Ms. Zurawski compensatory damages, plus demonstrated past and future pecuniary damages on each of the above-stated Count;

(b) Award Ms. Zurawski punitive and exemplary damages on the above-stated Count;

(c) Award Ms. Zurawski appropriate front pay and back pay, including all lost income and benefits of employment both past and future;

(d) Award Ms. Zurawski's attorneys' fees and the costs of this action;

    (e)    Award injunctive relief consisting of an order prohibiting the OAG from engaging in further employment practices that create or tolerate a hostile or discriminatory or retaliatory work environment;

    (f)    Award Ms. Zurawski full reinstatement with the OAG;

    (g)    Award Ms. Zurawski such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff Tara Lynn R. Zurawski demands a trial by jury on her Complaint against the OAG.

June 22, 2020

Respectfully submitted,

*/S/ CARLA D. BROWN*

_____

Carla D. Brown, VSB 44803
Charlson Bredehoft Cohen & Brown, PC
11260 Roger Bacon Drive, Suite 201
Reston, VA  20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile
CBrown@cbcblaw.com

*Counsel for Plaintiff Tara Lynn R. Zurawski*